Robert W. HALL, Plaintiff—Appellant,

v.

Gale A. NORTON;[*] United States
Department of the Interior,
Defendants—Appellees.

No. 03–15719.
D.C. No. CV–97–01146–LDG.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 9, 2003.[**]

Decided Feb. 23, 2004.

[*] Gale A. Norton is substituted for her predecessor, Bruce Babbitt, as Secretary of the Department of the Interior. Fed. R.App. Proc. 43(c)(2).

[**] This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Robert W. Hall, pro se, Las Vegas, NV, for Plaintiff–Appellant.

Matthew J. Sanders, U.S. Department of Justice, Washington, DC, for Defendant–Appellee.

Before GOODWIN, GRABER, and PAEZ, Circuit Judges.

## MEMORANDUM ***

Plaintiff Robert Hall ("Hall") appeals the district court's summary judgment in favor of the Secretary of the Interior and the Department of the Interior (collectively, "DOI"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

In a prior appeal of this case, we reversed the district court's summary judgment against Hall's National Environmental Policy Act ("NEPA") challenge to a proposed land exchange between Del Webb Conservation Holding Corporation ("Del Webb") and the Bureau of Land Management ("BLM"). *See Hall v. Norton*, 266 F.3d 969, 973–74 (9th Cir.2001). We remanded with directions to the district court to address "the potential emissions from the other 57,000 acres of land 'identified for disposal' or the adequacy of the BLM's analysis of those emissions." *Id.* at 978.

On remand, without holding a hearing, the district court granted the DOI's motion for summary judgment. The court rejected Hall's argument that the scope of the environmental assessment ("EA") should have extended to all 57,000 acres of public lands that had been identified as "available for disposal." Because there was no "reasonably foreseeable future project[ ]" involving all 57,000 acres, the district court concluded that the EA's cumulative impact analysis of the 25,540 acres that were likely to be disposed over the next twenty years was adequate.

In this appeal, Hall challenges (1) the district court's cumulative impact analysis, (2) its consideration of documents outside the administrative record, and (3) the court's failure to hear argument before ruling on the DOI's summary judgment motion.[2]

## I

■ We have held that an agency conducting an EA must analyze a proposal's

---

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts of this case, we recite them only as necessary to explain our decision.

2. Hall raises a series of other arguments about the sufficiency of the Del Webb EA that were never raised below and/or were not within the scope of our remand order. We decline to reach these other arguments because, in a subsequent appeal, "[t]he scope of review is narrowed to the limitations of the remand." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir.1995) (internal quotation marks omitted).

potential "cumulative impact," which is defined as "the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions . . . ." 40 C.F.R. § 1508.7; *see also Kern v. United States Bureau of Land Mgmt.*, 284 F.3d 1062, 1075 (9th Cir.2002). The scope of what constitutes a "reasonably foreseeable future action" has not been clearly defined. We have stated only that "[i]t is for the BLM to make that judgment in the first instance." *Id.* at 1079.

Hall contends that the scope of the cumulative impact analysis in the Del Webb EA should have included all 57,000 acres earmarked as "available for disposal." However, the BLM did more than just look at the potential impact from the Del Webb exchange of 4,700 acres. It also analyzed the potential impact of all reasonably foreseeable public and private land development in the Las Vegas Valley, going so far as to assume that 25,540 acres of public lands designated as "likely to be disposed" would actually be disposed. The district court explained that the BLM's analysis did not need to account for all 57,000 acres that *could* be disposed, when only 25,540 of those acres were *likely* to be disposed.[3] "When an agency's determination of what are reasonably foreseeable

future actions . . . is fully informed and well-considered, we will defer to that determination." *Kern*, 284 F.3d at 1075 (internal quotation marks omitted). We conclude, reviewing *de novo*,[4] that the BLM took a "hard look" at the cumulative impact of the Del Webb proposal, and its conclusion was neither arbitrary nor capricious. By so holding, the district court complied with our previous remand order.

II

■ Hall also challenges the district court's consideration of a 1998 proposed resource management plan and final environmental impact statement ("PRMP/FEIS") that was not part of the record before the BLM when it authorized the Del Webb land exchange. We review for abuse of discretion a district court's decision to rely on documents outside the agency's administrative record. *See San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir.2002).

Here, the district court used evidence of the PRMP/FEIS for two discrete purposes. First, the PRMP/FEIS was "necessary to explain the agency's action" in the face of Hall's arguments that the BLM relied on isolated EAs to avoid considering the larger cumulative impact of land disposals. *See Animal Def. Council*, 840

---

**3.** Hall has not identified any specific proposal or proposals that would involve the disposal of all 57,000 acres. "NEPA does not require evaluation of hypothetical proposals, impacts and alternatives concerning a nonexistent federal proposal. This would seem to be an impossible task. If and when such activities are actually proposed, the responsible agency will have to comply with NEPA requirements, and the question of whether an [environmental impact statement] is required will then be addressed." *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994) (finding that "[i]t would be premature and serve no useful purpose to now require the preparation of an [environmental impact

statement] when no specific federal action has been proposed").

**4.** "In NEPA actions, this court reviews de novo the district court's grant of summary judgment." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1435 (9th Cir.1988). "[W]e may only examine whether the agency has taken a hard look at environmental consequences. Only if the agency's analysis of environmental consequences is arbitrary and capricious or contrary to the procedures required by law can we conclude that the agency did not take a hard look." *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F.3d 754, 763 (9th Cir.1996) (internal quotation marks and citations omitted).

F.2d at 1436. Second, because there was a question about whether the BLM had "relied on documents or materials not included in the record" to calculate the likely rate of land disposals over the next twenty years, the district court used the PRMP/ FEIS to verify the sources of the BLM's information. *See id.* (internal quotation marks omitted). The district court also emphasized, however, that "[t]he PRMP/ FEIS was not dispositive in the court's ruling on [Hall's] preliminary injunction, and is of no consequence to the ruling on the instant motion [for summary judgment]." The district court did not abuse its discretion in relying on the 1998 PRMP/FEIS for these limited purposes.

### III

The local rules of the District Court of Nevada provide the court with discretion to consider and decide all motions with or without a hearing. *See* D. Nev. Local Rule 78–2. We have held, however, that a "district court may abuse its discretion if it refuses to hear oral argument when a party would suffer unfair prejudice as a result." *Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1200 (9th Cir.1999).

Here, Hall had (and took advantage of) two opportunities after remand to assert his arguments: at the preliminary injunction hearing and in his opposition to the BLM's motion for summary judgment. Hall does not explain what other arguments he would have raised to supplement his already ample briefing before the district court. Under these circumstances, the district court did not abuse its discretion in ruling on the DOI's motion for summary judgment without argument.

AFFIRMED.